## THE KENNEBEC.

(Circuit Court of Appeals, Second Circuit. June 14, 1913.)

No. 269.

TRUSTS (§ 44*)—AGREEMENT—EVIDENCE.
Evidence considered, and *held* not to establish the claim of the mortgagor of a vessel that its purchase by the mortgagee, when it was sold under superior liens, was on an agreement to hold it in trust for the benefit of both parties.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66-68; Dec. Dig. § 44.*]

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, in favor of libelant for an amount due for repairs made to claimant's vessel, the Kennebec. There is no question as to these repairs; the only question raised upon this appeal being whether the claimant is entitled by way of counterclaim to damages for alleged "conversion" of the steamer Felix Carbray.

H. L. Cheyney, of New York City, for appellant.

Haight, Sanford & Smith, of New York City (Clarence Bishop Smith, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. Claimant was heavily indebted to the dry dock company for repairs on the Kennebec, the Carbray, and a third steamer owned by him. In order to secure it he gave a mortgage upon the Carbray for $15,000. He subsequently sold the Carbray to the Atlantic Equipment Company, subject to the mortgage, which, however, had been reduced to $10,000. The Atlantic Company, dissatisfied with its bargain, subsequently took the Carbray to the yard of the libelant and left it there; it being agreed by the parties that the Dry Dock

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company should accept the surrender for the benefit of Chesbrough and itself. This left the situation as it was at first, title in Chesbrough and a valid mortgage for $10,000 owned by libelant.

The vessel had become incumbered by liens for certain supplies while in possession of the Atlantic Company, libels were filed, decrees obtained, and the vessel was exposed for sale by the marshal. There is no contention that these lien claims were not bona fide ones; they were properly prosecuted and the sale was duly had. Since such a sale would give a clear title and the lienors would probably not bid much more than the amount of their claims, Chesbrough could only protect his equity by bidding in his own interest. Similarly the dry dock company could protect its mortgage only by having some one present to bid in its behalf. A representative of the respondent (Chesbrough) and a representative of the libelant were both present at the sale; the former did not bid; the latter bought the boat for $4,250. Thereafter it treated the boat as its own, refusing to admit that Chesbrough had any further interest in it.

It is the contention of respondent that at interviews had before the sale it was agreed between representatives of the parties to this suit that the representative of libelant should bid the vessel in for the "joint interests" of both. In other words, that although respondent then owed it considerable money, had been 'a difficult debtor to get money from, and had even failed to keep the mortgaged vessel insured so that libelant had to take legal proceedings to prevent her from proceeding to sea uninsured, nevertheless libelant for no suggested consideration agreed to buy the vessel in, as trustee for the mortgagor putting up on his behalf a few thousand dollars additional and trusting that he would pay up some time.

There is considerable evidence, some of it conflicting as to what took place at various interviews before the trial. No useful purpose would be served by discussing that branch of the case; it is sufficient to say that it does not satisfy us, as it did not satisfy the District Judge, that any agreement of the sort alleged by respondent was entered into or that there was any unfair dealing on the part of the libelant which would support the contention that upon the purchase he became a trustee ex maleficio.

The decree is affirmed, with interest and costs.